IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| KERRY LAW and ARNOLD ZUEHLKE, on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 04-728-KI (lead case) |
| vs. | ) ) | |
| NORTHWEST NATURAL GAS COMPANY, | ) ) ) | OPINION AND ORDER |
| Defendant. | ) ) | |
| and | ) ) | |
| IKE WHITTLESEY, C.G. NICK COURTNEY, MARK PARRISH, JOHN J. SHOOTER, ROGER WHITTLESEY, and PHILIP COURTNEY, | ) ) ) ) ) | Case No. 05-241-KI (consolidated case) |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| NORTHWEST NATURAL, | ) ) | |
| Defendant. | ) | |

| | |
|---|---|
| KEN HOLTMANN and JEFFREY CARL O'NEAL, | ) Case No. 05-724-KI<br>) (consolidated case) |
| Plaintiffs, | |
| vs. | |
| NORTHWEST NATURAL, | |
| Defendant. | |

Tom Steenson
Michael Schumann
Zan Tewksbury
Steenson, Schumann, Tewksbury,
Creighton & Rose, P. C.
500 Yamhill Plaza Building
815 S. W. Second Avenue
Portland, Oregon 97204

    Attorneys for Plaintiffs

David H. Wilson
Francis T. Barnwell
Bullard Smith Jernstedt Wilson
1000 S. W. Broadway, Suite 1900
Portland, Oregon 97205

    Attorneys for Defendant

KING, Judge:

In these consolidated cases, plaintiffs Kerry Law, Arnold Zuehlke, Ken Holtmann, Jeffrey Carl O'Neal, Ike Whittlesey, C.G. Nick Courtney, Mark Parrish, John V. Shooter, Roger Whittlesey, and Phillip Courtney, all backhoe operators, allege that Northwest Natural unlawfully classified them as independent contractors and deprived them of overtime pay in violation of the Fair Labor Standards Act. They also claim Northwest Natural breached a contract as a result of

Page 2 - OPINION AND ORDER

that misclassification. Before me is defendant Northwest Natural's Motion to Dismiss Claims Preempted by ERISA; Alternative Motion to Stay (#86). For the following reasons, I deny Northwest Natural's motion to dismiss, but grant its motion to stay and direct the plaintiffs to exhaust their administrative remedies.

## BACKGROUND

The ten plaintiffs in these consolidated cases provided backhoe services for Northwest Natural, performing excavation in connection with repair and installation of gas lines. The plaintiffs have all worked for Northwest Natural in excess of 40 hours per week for between eleven and thirty-seven years. Plaintiffs allege that Northwest Natural directed the hours and location of the work to be performed, told plaintiffs when to start and when to stop working, directed the type of work to be performed by plaintiffs, set uniform, non-negotiable rates of pay, required attendance at staff meetings and retained the right to terminate them. Plaintiffs worked solely or nearly solely for Northwest Natural.

In 1994, at least seven of the ten plaintiffs signed contracts in which plaintiffs represented that they were independent businesses and would notify Northwest Natural if their status as independent contractors changed.[1] Prior to entering into these contracts, plaintiffs had worked for Northwest Natural for between three and thirty-five years.

Northwest Natural's employees who have health insurance through their employment are covered by one of the following two plans established and operated pursuant to ERISA: The Western States Health & Welfare Trust Fund of the Office & Professional Employees

---

[1] The parties do not indicate whether Ken Holtmann or Jeffrey Carl O'Neal signed such an agreement.

International Union, Local No. 11 (the "Western States Plan"), also called the "Taft-Hartley Trust," and the Northwest Natural Gas Company Cafeteria Plan (the "Cafeteria Plan"). Employees who work under the collective bargaining agreement between Northwest Natural and Office & Professional Employees International Union, Local No. 11 are eligible for health insurance provided under the Western States Plan. Employees who are not covered by the collective bargaining agreement are not eligible to participate. The Western States Plan is administered by trustees, half appointed by the union and half appointed by employers. Under the Cafeteria Plan, Northwest Natural provides nonunion employees with health insurance.

Northwest Natural's employees who have retirement benefits through their employment are covered by either the Northwest Natural Gas Company Retirement Plan for Bargaining Unit Employees (the "BU Plan") or the Northwest Natural Gas Company Retirement Plan for Non-Bargaining Unit Employees (the "NBU Plan").

Of the ten plaintiffs, only Law and Zuehlke submitted letters to the Plan Administrator claiming retirement benefits from the "Retirement Plan." The Plan Administrator determined that neither Law nor Zuehlke were eligible for benefits under either the BU Plan or the NBU Plan. The Plan Administrator informed each of his right to appeal, explained the procedure for appeal and alerted each to the 60-day deadline for appeal. Neither Law nor Zuehlke appealed the denial of his claim. The appeal period for Law expired in late November, 2004, and for Zuehlke in early December, 2004.

In April, 2005, plaintiffs were advised of the procedure for making a claim on the retirement plans and health benefit plans. None of them have done so.

I have considered both the initial briefing submitted by the parties as well as the supplemental briefs filed after a brief oral argument on Northwest Natural's motion to dismiss or alternative motion to stay.

## LEGAL STANDARDS

A failure to exhaust non-judicial remedies is a "matter of abatement" that is "related" to the court's jurisdiction, but such a failure does not fall within any of the categories of reasons for dismissal specified in Rule 12(b). Ritza v. International Longshoremen's and Warehousemen's Union, 837 F.2d 365, 368-69 (9th Cir. 1988) (per curiam). Thus, a motion to dismiss for a failure to exhaust non-judicial remedies is an unenumerated Rule 12(b) motion. Id. at 369. In deciding a motion to dismiss for failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact, but only with regard to the exhaustion issue. Id.

## DISCUSSION

I.  Whether Plaintiffs' Existing or Proposed Claims are Preempted by ERISA

Northwest Natural moves to dismiss the Fifth Claim for Relief ("Breach of Contract") in Law v. Northwest Natural, CV 04-728-KI, and the Second Claim for Relief ("Breach of Contract") in Whittlesey v. Northwest Natural, CV 05-241-KI, to the extent those claims are preempted by the Employee Retirement Income Security Act ("ERISA"), since plaintiffs have not exhausted their administrative remedies. Although Northwest Natural's motion was filed before the Holtmann v. Northwest Natural, CV 05-724-KI complaint was filed, the parties have agreed that Northwest Natural's motion extends to that complaint, which alleges breach of contract in the Second Claim for Relief.

Alternatively, Northwest Natural moves for a stay of these consolidated cases pending plaintiffs' exhaustion of ERISA claim procedures.

The breach of contract claim at issue reads, in pertinent part:

**Breach of Contract**

28. NWN's [Northwest Natural's] compensation and benefits programs, accords, agreements, and plans, including the Retirement Plan, are contracts with employees of NWN. Plaintiffs, as employees in fact, are contractually entitled the compensation, rights and benefits conferred upon NWN employees. NWN's exclusion of plaintiffs from these programs, accords, agreements, and plans, including the Retirement Plan, and the compensation, rights and benefits conferred upon its employees constitutes a breach of contract.

29. As a result of NWN's breach of contract as alleged herein, plaintiffs have been damaged in the following ways, among others: by the value of what each of them would have received under NWN's Retirement Plan had they been properly classified as employees; by amounts paid out of pocket by plaintiffs for health insurance and treatment; by the value of paid vacation, holidays and sick days; and by amounts paid by them for what should have been the employer's share of FICA taxes.

Law Second Amended Complaint. The Whittlesey and Holtmann complaints contain identical language.

ERISA is intended to "protect the interests of employees in pension and welfare plans, and to protect employers from inconsistent state regulation of the plans." Scott v. Gulf Oil Corp., 754 F.2d 1499, 1501 (9th Cir. 1985) (internal citation omitted). In order to further this goal, section 514 of ERISA provides:

> Except as provided in subsection (b) of this section, the provisions of this subchapter [Protection of Employee Benefit Rights] and subchapter III [Plan Termination Insurance] of this chapter shall supersede any and all State laws[2]

---

[2]The preemption clause applies to both state common-law causes of action and regulatory laws. Gulf Oil, 754 F.2d at 1502.

insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

29 U.S.C. § 1144(a) (1999) (emphasis added).

The Ninth Circuit has explained this preemption provision as follows:

[T]he Supreme Court has recently admonished that the term is to be read practically, with an eye toward the action's actual relationship to the subject plan.

Generally speaking, a common law claim "relates to" an employee benefit plan governed by ERISA if it has a connection with or reference to such a plan.

In evaluating whether a common law claim has "reference to" a plan governed by ERISA, the focus is whether the claim is premised on the existence of an ERISA plan, and whether the existence of the plan is essential to the claim's survival.

In determining whether a claim has a "connection with" an employee benefit plan, courts in this circuit use a relationship test. Specifically, the emphasis is on the genuine impact that the action has on a relationship governed by ERISA, such as the relationship between the plan and a participant.

Providence Health Plan v. McDowell, 385 F.3d 1168, 1172 (9th Cir. 2004) (internal citations omitted).

Reading the breach of contract claim as it is currently written, I find that it is preempted by ERISA. Plaintiffs allege that the Retirement Plan is a "contract" with Northwest Natural's employees, that plaintiffs are Northwest Natural employees, that Northwest Natural breached that contract by excluding plaintiffs from the Retirement Plan, and that plaintiffs are entitled to the value of the Retirement Plan benefits. In short, this claim is a claim for breach of an ERISA plan.

In order to avoid preemption by ERISA, plaintiffs request permission to amend this breach of contract claim. They wish to allege that Northwest Natural wrongfully characterized them as independent contractors to avoid responsibilities under ERISA, among other state and

federal laws, to fund benefit plans, retirement and pension plans, and health insurance plans, thereby breaching an employment contract with plaintiffs. In an amended claim, plaintiffs would request the value of what they would have received as retirement benefits if Northwest Natural had not breached the employment contract. Plaintiffs argue these changes would clarify that they are not claiming that Northwest Natural breached a retirement plan, but instead that Northwest Natural breached its employment contract with plaintiffs. Plaintiffs contend they are not asking the court to interpret or enforce an ERISA plan, nor are they seeking a distribution of benefits under an ERISA plan. Rather, plaintiffs seek amounts equal to what they would have been entitled to under a retirement plan.

In addition, or alternatively, plaintiffs ask that they be allowed to add a claim for tortious breach of the implied covenant of good faith and fair dealing. Plaintiffs would allege that Northwest Natural engaged in bad faith in wrongly categorizing them as independent contractors, in demanding that they sign an agreement reciting that plaintiffs are independent contractors, and in intentionally withholding benefits and compensation plaintiffs would have received had Northwest Natural been acting in good faith.

Plaintiffs liken their case to a Sixth Circuit case in which the court declined to find preemption where the effect of the state law claim on "employee benefit plans is merely tenuous, remote, or peripheral." Marks v. Newcourt Credit Group, Inc., 342 F.3d 444, 452 (6th Cir. 2003) ("Marks"). Marks was a senior executive for AT & T Capital Corporation, and a participant in a severance plan entitling him to a large cash payment should he be terminated for a qualifying reason. The company was purchased by Newcourt, and after some time Marks' job responsibilities and bonus changed. He sought to exercise his rights under the benefit plan,

Page 8 - OPINION AND ORDER

alleging he had been constructively discharged, but the claim was denied. The court found the plaintiff's breach of contract claim was not preempted by Section 514; the court carefully focused on Marks' allegations that Newcourt had changed his job responsibilities and compensation and asserted that this conduct alone might constitute a breach of contract, regardless of the plan. Id. at 453.

Similarly, plaintiffs assert that their allegations arise not from any breach of an ERISA plan, but from the breach of Northwest Natural's promise to provide certain benefits to its employees when plaintiffs, if properly classified, would be employees. References to the retirement plan, according to plaintiffs, are simply a way to identify their damages.

I find that plaintiffs' proposal to avoid ERISA preemption by re-pleading the breach of contract claim would be fruitless. Resolution of whether Northwest Natural breached a contract with plaintiffs by avoiding its legal obligations under ERISA depends upon whether plaintiffs are entitled to ERISA benefits in the first place. In other words, the claim rises and falls based on the existence of an ERISA plan. In addition, because plaintiffs would amend their complaints to seek the value of what each of them would have received under Northwest Natural's retirement plan had they been properly classified as employees, the court would need to evaluate the plans to calculate damages if plaintiffs were successful. This is further reason to find the breach of contract claim "relates to" an ERISA plan.

Furthermore, amending the complaints to make out a tort action would not assist the plaintiffs. According to plaintiffs, at least a portion of the tort claim would allege that Northwest Natural intentionally deprived plaintiffs of benefits. However, in resolving this question, I would

have to make a finding that plaintiffs are eligible for benefits in the first place, a determination that would require referring to the plans themselves.

Marks does not compel a different result. In this case, as opposed to Marks, no matter how artfully pleaded, the crux of plaintiffs' claim depends on whether they are entitled to benefits. If not, then Northwest Natural cannot possibly have breached any employment contract by avoiding any legal obligations under ERISA to fund benefit plans, retirement and pension plans and health insurance plans. The allegations in Marks that the court found avoided preemption were based on conduct irrespective of any benefit plan.

II. Whether the ERISA-Preempted Claims Should be Dismissed or Plaintiffs Should be Required to Exhaust Administrative Remedies

Northwest Natural requests that I dismiss those portions of the breach of contract claim that are preempted by ERISA, because plaintiffs failed to exhaust their administrative remedies. Alternatively, Northwest Natural requests that the court stay the case while plaintiffs assert their ERISA claims under the claims procedure.

Additionally, Northwest Natural moves for dismissal with prejudice of Law's and Zuehlke's claims for retirement benefits because they failed to appeal the Plan Administrator's denial. Alternatively, Northwest Natural requests that their claims be returned to the claims procedure.

Plaintiffs seek relief from the exhaustion requirement by offering a futility defense.

Federal courts are authorized to require exhaustion of administrative remdies, and "as a matter of sound policy they should usually do so." Diaz v. United Agr. Employee Welfare Ben. Plan and Trust, 50 F.3d 1478, 1483 (9th Cir. 1995); Amato v. Bernard, 618 F.2d 559, 568 (9th

Page 10 - OPINION AND ORDER

Cir. 1980). The Plan Administrator is charged with construing the terms of the plan and determining eligibility. Exhaustion ensures consistency in such decisions, enables development of a record, and offers an opportunity for claim resolution. Amato, 618 F.2d at 567.

Plaintiffs contend that exhaustion would be futile. Plaintiffs assert that the record shows they are battling Northwest Natural's perception and treatment of them as independent contractors. They point to the Plan Administrator's denials of Law's and Zuehlke's claims as evidence that Northwest Natural will never consider plaintiffs to be employees entitled to plan benefits. For example, the Plan Administrator for the Retirement Plan described the eligibility requirements as follows:

> The BU Plan . . . is limited to persons who are <u>classified by the Company</u> as employees . . . . As you know, you never have been classified by the Company as an employee . . . .
>
> Similarly, the NBU Plan currently provides that benefits are available only to "Non-Bargaining Unit Employees." An "Employee" is defined as someone who is <u>classified by the Company</u> as an employee and whose compensation is reported on a Form W-2. . . . The evidence available to the Plan Administrator as more fully described in the attached Reasons for Decision, indicates that you never performed services as an employee as that term is defined in the Plans. Therefore, you do not meet the eligibility definitions in either the BU Plan or the NBU Plan during any of the relevant periods.

McCoy Dec., Ex. D at 2 (emphasis added).

Northwest Natural replies that ERISA establishes plans as separate legal entities from the employers who sponsor the plans, so it is the plan, not Northwest Natural, that makes the decision at the end of the claims procedure. Additionally, the fact that Law's and Zuehlke's claims were denied is not an indication of how the Plan Administrator will decide the other plaintiffs' claims, or how the Western Benefits Plan Administrator for health benefits will

Page 11 - OPINION AND ORDER

respond. Furthermore, there is no evidence of hostility or bias towards plaintiffs. Amato, 618 F.2d at 569.

Although it at first appears from plaintiffs' evidence that it might be futile to require Law and Zuehlke to appeal the Plan Administrator's denial, or to require the other plaintiffs to submit their claims to the Plan Administrator, it is not a foregone conclusion, and absent evidence of a biased or flawed claims process, I am unwilling to relieve them of their responsibility to do so. Furthermore, because none of the plaintiffs, including Law and Zuehlke, have attempted to exhaust remedies with the health plans,[3] I do not know on what basis (if at all) their claims would be denied. Accordingly, it is necessary for plaintiffs to exhaust their remedies with all the other plans from which they think they are entitled to benefits. I use my discretion to excuse Law and Zuehlke from their failure to appeal, and at the suggestion of Northwest Natural I remand their claims to the claims procedure.

Rather than dismiss that portion of plaintiffs' breach of contract claim that is preempted by ERISA for failure to exhaust administrative remedies, I will stay the case while plaintiffs pursue their administrative remedies. "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. American Water Works & Elec. Co., 299 U.S. 248, 254 (1936). Pursuant to this authority, a court may enter a stay while administrative proceedings are resolved if competing interests weigh in favor of such a stay. Cohen v. Carreon, 94 F. Supp.2d 1112, 1115 (D. Or. 2000).

---

[3]Although plaintiffs assert they have made no claim for medical benefits, their complaints essentially seek the value of health benefits in demanding reimbursement for amounts paid for health insurance and treatment.

Page 12 - OPINION AND ORDER

A stay will serve to conserve judicial resources. During the claims procedures, the parties will develop the factual record relating to the plaintiffs' status as independent contractors or employees, and this evidence will be directly related to the remaining claims in the case. While I will not be bound by any Plan Administrator's conclusion on this issue, as plaintiff's fear, evidence collected in these proceedings will be helpful to me or the jury in a final determination of plaintiffs' status.[4] For reasons of judicial economy and efficiency, I would prefer to hear plaintiffs' non-ERISA claims following the conclusion of the claims process. Furthermore, plaintiffs do not contend that their interests will be impaired during the stay, and with an order permitting limited discovery, any harm in delaying adjudication of the remaining claims will be offset.

I direct that the case be stayed except with respect to limited discovery. In order to make efficient use of this time while plaintiffs exhaust their administrative remedies, and in order to ensure that plaintiffs obtain complete information regarding the potentially applicable ERISA plans, some discovery must be permitted. Therefore, a telephone conference will be scheduled shortly to set a discovery schedule and to discuss the extent of permissible discovery.

///

///

---

[4] I reject plaintiffs' argument that I must first determine their legal status, whether as employees or independent contractors, prior to ruling on the question of preemption. First of all, preemption is determined on the basis of the allegations in the complaint. Gulf Oil, 754 F.2d at 1504. Furthermore, if I were to decide that plaintiffs are "employees," the question would still remain whether plaintiffs are entitled to benefits under the plans.

## CONCLUSION

Northwest Natural's Motion to Dismiss Claims Preempted by ERISA; Alternative Motion to Stay is granted in part and denied in part. The case will be stayed with the exception of limited discovery. In addition, the parties shall submit a joint report to me on or before January 31, 2006 as to the status of the claims procedure.

IT IS SO ORDERED.

Dated this ___18th___ day of October, 2005.

                                            ___/s/ Garr M. King___
                                            Garr M. King
                                            United States District Judge